ESTATE OF MINNIE L. BOESHORE, DECEASED, LINCOLN NATIONAL BANK & TRUST COMPANY OF FORT WAYNE AND MELVIN V. EHRMAN, EXECUTORS, PETITIONERS v. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 6777–80.    Filed March 31, 1982.

*Stephen J. Williams*, for the petitioners.
*Elsie Hall*, for the respondent.

OPINION

FAY, *Judge*: Respondent determined a deficiency of $101,358.53 in the Federal estate tax of the Estate of Minnie L. Boeshore. After concessions, the issues are (1) whether a deduction is allowable for the present value of a certain charitable unitrust interest created by a testamentary trust, and (2) the correct actuarial computation of the present value of a charitable remainder interest created by a separate inter vivos trust.

All the facts have been stipulated and are found accordingly.

Petitioners Lincoln National Bank & Trust Co. of Fort Wayne and Melvin V. Ehrman are the executors of the Estate of Minnie L. Boeshore. At the time the petition was filed, the principal place of business of Lincoln National Bank & Trust Co. of Fort Wayne and the residence of Melvin V. Ehrman were Fort Wayne, Ind.

## Charitable Unitrust Interest

Minnie L. Boeshore (decedent) died May 28, 1976. After certain specific bequests, the residue of her estate was devised to the "Minnie L. Boeshore Charitable Remainder Unitrust." The pertinent terms of such trust provide that during each taxable year of the trust, the trustee shall distribute a unitrust amount equal to 6 percent of the fair market value of the trust assets valued annually. During the life of decedent's surviving spouse, Jay F. Boeshore, 70 percent of such distribution is to be paid to decedent's spouse, and the remaining 30 percent is to be paid to decedent's daughter, Shirley Ann Streicher, and two grandchildren, Timothy Streicher and Lori Streicher Schaeffer. After the death of decedent's spouse, 58 percent of the unitrust's annual payout is to be paid to decedent's daughter

and two grandchildren for their lives, while the remaining 42 percent is to be paid to charity.[1] Upon the death of all four individual beneficiaries, the ultimate remainder passes to charity.

On the date of Minnie L. Boeshore's death, the four named individual beneficiaries were living, and their ages were as follows: Jay F. Boeshore (spouse), 93; Shirley Ann Streicher (daughter), 45; Timothy Streicher (grandchild), 26; and Lori Streicher Schaeffer (grandchild), 23.

Petitioners claimed a charitable deduction of $381,148 as the present value of the unitrust and remainder interests passing to charity. In his notice of deficiency, respondent allowed a deduction of $25,179.86 as the present value of the remainder interest but disallowed a deduction of $355,968.14 as the present value of the unitrust interest payable to charity—the 42 percent of the annual payout beginning at the date of death of decedent's spouse.

The narrow issue before us is whether petitioners are entitled to a Federal estate tax deduction for the present value of the charitable unitrust interest. Respondent relies on sec. 20.2055–2(e)(2)(vi)(e), Estate Tax Regs. (hereinafter the regulation), to disallow the deduction because the charitable unitrust interest follows a private unitrust interest. Petitioners contend that, insofar as the regulation precludes a deduction for the charitable unitrust interest, it is invalid. We agree with petitioners.

Generally, section 2055(a) allows a Federal estate tax deduction for the value of property in a decedent's gross estate that is transferred by the decedent to a qualifying charity. Decedents often desire to mix private objectives with philanthropy in their testamentary transfers; thus, it is common for interests in the same property to pass for both charitable and noncharitable purposes. For example, it is possible for a decedent to transfer property to a trust and require that either the income be paid to a charity for a period of years with the remainder payable to private persons thereafter, or that the income be paid to private persons, and the remainder to a

---

[1]All charitable interests pass to qualified charitable organizations within the meaning of sec. 2055(a). Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954 as amended and in effect at the date of decedent's death.

charity. Section 2055(e)(2) limits the deductibility of the partial interest passing to charity in those so-called split-interest transfers by providing that no charitable deduction is allowed in such a case unless the form requirements specified in section 2055(e)(2)(A) and (B) are satisfied.[2] With respect to a charitable nonremainder interest, section 2055(e)(2)(B) provides that such interest must take the form of either a guaranteed annuity or a unitrust interest.[3] Implementing section 2055(e)(2)(B), the regulation in issue provides rules for those instances when the existence of a private interest precludes a deduction for the value of a charitable unitrust interest. That regulation provides in pertinent part:

Sec. 20.2055–2 Transfers not exclusively for charitable purposes.— * * *

(e) *Limitation applicable to decedents dying after December 31, 1969—* * * * no deduction is allowed under section 2055 for the value of the interest which passes or has passed for charitable purposes unless the interest in property is a deductible interest described in subparagraph (2) of this paragraph. * * *

\*    \*    \*    \*    \*    \*    \*

(2) *Deductible interests.* A deductible interest for purposes of subparagraph (1) of this paragraph is a charitable interest in property where—

\*    \*    \*    \*    \*    \*    \*

(vi) *Unitrust interest.* (a) The charitable interest is a unitrust interest * * *

\*    \*    \*    \*    \*    \*    \*

(e) Where a charitable interest in the form of a unitrust interest is in trust, the charitable interest will not be considered a unitrust interest if any amount other than an amount in payment of a unitrust interest may be paid by the trust for a private purpose before the expiration of all the income interest for a charitable purpose, unless such amount for a private purpose is paid from a group of assets which, pursuant to the governing instrument of the trust, are devoted exclusively to private purposes and to which section 4947(a)(2) is inapplicable by reason of section 4947(a)(2)(B). The exception in the immediately preceding sentence with respect to any unitrust interest for a private purpose shall apply only if the obligation to pay the unitrust interest for a charitable purpose begins as of the date of death of the

---

[2]Generally, sec. 2055(e)(2) is effective with respect to decedents dying after Dec. 31, 1969. See Tax Reform Act of 1969, Pub. L. 91–172, sec. 201(d)(1), 83 Stat. 487, 560.

[3]Generally, a guaranteed annuity is the right to receive payment, at least once a year, of a determinable amount, normally a stated dollar amount, and a unitrust interest is the right to receive payment, at least once a year, of a fixed percentage of the fair market value of property which funds the unitrust interest. See sec. 20.2055–2(e)(2)(vi)(a) and (v)(a), Estate Tax Regs.

decedent and the obligation to pay the unitrust interest for private purpose does not precede in point of time the obligation to pay the unitrust interest for a charitable purpose and only if the governing instrument of the trust does not provide for any preference or priority in respect of any payment of the unitrust interest for a private purpose as opposed to any payment of any unitrust for a charitable purpose. * * *

Thus, as relevant herein, the regulation disallows a deduction for a charitable unitrust interest if such unitrust interest does not begin as of the date of death of the decedent or is preceded in time by a private unitrust interest.[4]

Since the charitable interest in issue is a nonremainder interest and is in the form of a unitrust interest, the charitable interest clearly complies with the form prescribed by section 2055(e)(2)(B). Yet, the regulation purports to disallow the deduction since the obligation to pay the charitable interest does not begin as of decedent's death and is preceded in time by an obligation to pay a private unitrust interest. For the following reasons, we find those restrictions are invalid in this case.

Treasury regulations are entitled to considerable weight; however, respondent may not usurp the authority of Congress by adding restrictions to a statute which are not there. *United States v. Marett*, 325 F.2d 28 (5th Cir. 1963); *Coady v. Commissioner*, 33 T.C. 771, 779 (1960), affd. 289 F.2d 490 (6th Cir. 1961); *Smith v. Commissioner*, 332 F.2d 671 (9th Cir. 1964). Moreover, a regulation is not a reasonable statutory interpretation unless it harmonizes with the statute's "origin and purpose." *United States v. Vogel Fertilizer Co.*, 455 U.S. ___ (1982); *National Muffler Dealers Assn., Inc. v. United States*, 440 U.S. 472, 477 (1979).[5]

---

[4]In proposed form, the regulation disallowed a deduction if any amount, regardless of form, could be paid for a private purpose before the expiration of the charitable unitrust interest. Thus, if a private unitrust interest could be paid before the expiration of the charitable unitrust interest, the proposed regulation would have disallowed the deduction. See 37 Fed. Reg. 7890, 7895 (1972). When the regulation was finally adopted, the Treasury relaxed, to an extent, the restrictions if the private payments took the form of a unitrust interest. See T.D. 7318, 1974–2 C.B. 305. As adopted, the regulation now clearly allows a deduction when a private unitrust is payable concurrently with the charitable unitrust interest.

[5]The regulation in issue is an "interpretive" regulation issued under general authority vested in respondent under sec. 7805 and is to be accorded less weight than "legislative" regulations issued pursuant to a specific congressional delegation of lawmaking authority.

Prior to the Tax Reform Act of 1969, a charitable contribution deduction was generally available for the value of a charitable interest in a split-interest transfer.[6] Thus, if money or property was placed in trust to pay the income to an individual during his life, or for a term of years, and then to pay the principal to a charitable organization, the present value of the remainder was deductible. Sec. 20.2055–2(a), Estate Tax Regs. Under those prior rules, a problem arose from the manner in which trust assets could be invested. In the case of a charitable remainder, the trust corpus could be invested in a manner so as to maximize the income interest resulting in a remainder to charity that bore little relation to the present values calculated under the tables assuming a certain interest rate. Similarly, in the case of a charitable income interest, the trust corpus could be invested in low- or non-income producing assets with the result that the actual charitable benefit would be far less than the deduction allowed based on the tables with an assumed interest rate.

The primary purpose of section 2055(e)(2) is to eliminate the potential for the abuse described above and to insure a greater correlation than existed under prior law between the amount of the charitable deduction and the value of property eventually received by charity. *Estate of Blackford v. Commissioner*, 77 T.C. 1246 (1981); *Estate of Edgar v. Commissioner*, 74 T.C. 983 (1980); H. Rept. 91–413 (1969), 1969–3 C.B. 200, 237; S. Rept. 91–552 (1969), 1969–3 C.B. 423, 479, 482; Conf. Rept. 91–782 (1969), 1969–3 C.B. 644, 655. In enacting section 2055(e)(2), Congress determined that a charitable interest would be protected from abuse if cast in certain prescribed forms. If the charitable interest is a nonremainder interest, as in the case before us, the prescribed form is either a guaranteed annuity or a unitrust interest. When an interest is cast in either of

---

*United States v. Vogel Fertilizer Co.*, 455 U.S. ___ (1982); *State of Washington v. Commissioner*, 77 T.C. 656, 675 (1981).

[6]To be deductible, the charitable interest needed only to be "presently ascertainable." See sec. 20.2055–2(a), Estate Tax Regs., applicable to decedents dying before Jan. 1, 1970.

The need to value the charitable interest arises at the date of decedent's death. The amount of the deduction is the present value of the charitable interest artificially determined by using actuarial tables and an assumed interest rate. Generally, the assumed interest rate was 3½ percent for estates of decedents dying on or before Dec. 31, 1970, and the rate is 6 percent for decedents dying after Dec. 31, 1970. Secs. 20.2031–7 and 20.2031–10, Estate Tax Regs.

these two forms, the annual payout is a fixed amount and is not a function of the income generated by the property. In effect, all income received by the trust would be combined with principal in a single fund and, for purposes of determining the payout to the income beneficiary, no distinction would be made between "income" and "principal."[7] Under this format, a trustee is encouraged to exercise sound business judgment since neither beneficiary is benefited to the detriment of the other beneficiary by the investment decisions. Thus, when all beneficial "income" interests in a trust are cast in those prescribed forms, incentives to manipulate the income stream are removed.

In the case before us, all "income" interests, charitable and private, are cast in the form of unitrust interests. Thus, any incentives to manipulate the income stream are removed. Moreover, the trust is not subject to any power to invade, to alter, to amend, or to revoke for the benefit of any private purpose. In fact, no amount, other than the unitrust amount, may be paid from the trust for any purpose. While the regulation at issue herein views the mere intervention of a private unitrust interest between the date of decedent's death and beginning of a charitable unitrust interest as a prohibited sequence, we are unable to find that Congress considered the sequence of payments, by itself, to be such a threat to the charitable benefit so as to preclude a Federal estate tax deduction. It was, instead, the express intent of Congress to allow a charitable deduction for a gift of a charitable income interest in trust if the requirements as to the form of the gift are met. S. Rept. 91–552, *supra*, 1969–3 C.B. at 483.

Furthermore, our finding is consistent with the rules applicable to remainder interests. There is no question that a

---

[7] If a trust follows the prescribed format, it is possible for the trustee to pursue either a growth-oriented or an income-oriented investment policy with the assurance that one interest will not be favored over the other. For example, assume a decedent transfers $100,000 in trust to pay annually 5 percent of the value of the trust property to X for 20 years, remainder to charity. If the trustee invests in low-yield common stocks, returning dividends of $1,000 and capital appreciation of $4,000, the value of the fund would be $105,000 at the end of the first year. The payout to X would be $5,250 (5 percent of $105,000). Conversely, if the trustee invests in 5-percent bonds, returning interest of $5,000, but which neither appreciate nor depreciate in value, the payout to X would likewise be $5,250. Thus, it is immaterial to both the income beneficiary and the remainderman whether the increment in value of the trust takes the form of "income" or "principal."

deduction is allowed for a charitable remainder interest even though such remainder is preceded by a private unitrust interest. Secs. 2055(e)(2)(A) and 664(d)(2).[8] Indeed, respondent has allowed a deduction for the value of the remainder interest in this case, notwithstanding the existence of the preceding private unitrust interests.[9] Since the statute allows a deduction for a charitable remainder following a private unitrust interest, we see no valid reason for denying a deduction for a charitable unitrust interest solely because it succeeds a private unitrust interest.[10]

On brief, respondent asserts that "due to the vagaries of chance, it is far less certain which of the four individuals will predecease the others." The substance of respondent's assertion is not entirely clear. Perhaps respondent is concerned that the three youngest beneficiaries will either die "prematurely," thereby effectively reducing the charitable benefit arising out of its unitrust interest or that those beneficiaries will all predecease the surviving spouse, thereby eliminating the charitable unitrust interest entirely. However, we do not see how the charitable benefit is threatened.

First, any lesser benefit actually received by charity from its unitrust interest due to the "premature" death of the individual beneficiaries in this case will accelerate the possession of

---

[8]With respect to charitable remainder interests, no similar additional restrictions, which would disallow a deduction for the remainder interest if preceded by a private unitrust interest, are imposed by regulation. See sec. 20.2055–2(e)(2)(iv), Estate Tax Regs., and sec. 1.664–3, Income Tax Regs.

[9]We note that the decedent could have accomplished essentially the same result by, instead of casting the charitable interest in the form of a unitrust interest, transferring the charitable "branch" of the trust outright to charity following the death of her surviving husband or by initially creating two separate trusts. The economic value passing to charity would be the same and, presumably, all charitable interests would be deductible remainder interests under sec. 2055(e)(2)(A).

[10]Respondent has been unable to provide any explanation of the reasons for disallowing a deduction for the value of the charitable unitrust interest herein while, at the same time, allowing a deduction for the value of the charitable remainder interest in the same property. See *Dorfman v. Commissioner*, 394 F.2d 651 (2d Cir. 1968); see also *American Standard, Inc. v. United States*, 220 Ct. Cl. 411 , 602 F.2d 256 (1979).

Likewise no reason is given in Rev. Rul. 76–225, 1976–1 C.B. 281, wherein respondent held a guaranteed annuity interest nondeductible in similar circumstances. In so holding, respondent relied exclusively on sec. 20.2055–2(e)(2)(v)(*f*), Estate Tax Regs.—the guaranteed annuity counterpart to the unitrust regulation involved herein. See also sec. 20.2055–2(f)(2)(iv), example (*4*), Estate Tax Regs.

the remainder interest resulting in a comparable, if not greater, charitable benefit.[11]

Second, the regulations expressly provide that a charitable unitrust may be paid for the life or lives of an individual or individuals, so long as each individual is living at the date of decedent's death. Sec. 20.2055–2(e)(2)(vi)(a), Estate Tax Regs. Thus, a charitable unitrust interest is not tainted merely because it is measured by the life of an individual. In the case before us, all individual beneficiaries were living at the date of decedent's death. Furthermore, the inability to predict with exactitude the value of a charitable benefit due solely to the failure of actual lifetimes precisely to equal life expectancies under the actuarial tables is not the type of threat to charity Congress had in mind when section 2055(e)(2) was enacted.[12] Such inexactitude may also affect the value of a charitable remainder interest, but there is no question that a deduction is allowable for such an interest. As noted above, Congress meant to curtail perceived abuses such as manipulative investments by the trustee. Lack of precise valuation due to the vagaries of chance simply does not constitute a potential abuse.

In summary, we find Congress did not intend to disallow a Federal estate tax deduction for the value of a charitable unitrust interest in the circumstances of the case before us. To this extent, the regulation adds restrictions to the statute that

---

[11]We note the case before us presents a unique situation in that a charitable remainder immediately follows a charitable income interest.

[12]Actuarial tables provide a long-recognized method of valuing lifetime and remainder interests, and their use has been approved by the courts. *Ithaca Trust Co. v. United States*, 279 U.S. 151 (1929); *Simpson v. United States*, 252 U.S. 547 (1920); *McCurtry v. Commissioner*, 203 F.2d 659 (1st Cir. 1953). Although respondent does not raise it, the following hypothetical may illustrate his concern underlying the regulation at issue herein. Suppose a decedent creates a trust with a unitrust interest to A, a 24-year-old female, for A's life, then to charity for the life of B, a 69-year-old male, with remainder to X, a private individual. The unitrust amount is 5 percent of the value of the trust property determined annually (assume an adjusted payout rate of 5 percent, sec. 1.664–4(b)(2), Income Tax Regs.). According to the actuarial tables which are based on the laws of probability, if $10,000 is transferred to the trust, the present value of the charitable interest is roughly $24.60. See sec. 20.2031–10(e), Estate Tax Regs., and IRS Publication No. 723 (12–70). Moreover, sec. 20.2055–2(b), Estate Tax Regs., provides "no deduction is allowable unless the possibility that the charitable transfer will not become effective is so remote as to be negligible." Given the small valuation from application of the actuarial tables and the necessity of showing that the chance that a charity would not take was so remote as to be negligible, we find any potential abuse from dispositions analogous to the above hypothetical is adequately protected against.

are not there, and the regulation is out of "harmony" with the statute's origin and purpose. *United States v. Vogel Fertilizer Co.*, 455 U.S. ___ (1982). Thus, insofar as section 20.2055–2(e)(2)(vi)(*e*), Estate Tax Regs., disallows a deduction for the value of the charitable unitrust interest at issue herein, it is invalid. Therefore, in computing their Federal estate tax, petitioners are entitled to a deduction of $355,968.14, as the present value of the charitable unitrust interest.

## *Actuarial Computation*

The decedent and her spouse created a separate and irrevocable inter vivos trust called the "Jay F. Boeshore and Minnie L. Boeshore Trust" under the terms of an agreement dated April 3, 1967. On that same date, decedent and her spouse irrevocably transferred equal amounts from their respective individual assets to the trust. No subsequent transfers were made. The fair market value of the trust assets at decedent's death was $389,216, of which one-half, or $194,608, represented decedent's share.

Under the terms of the trust, the grantors were to receive the net income of the trust in equal shares so long as both were alive. Following the death of the first of the grantors to die, the survivor was entitled to all the net income. Following the death of the survivor, all net income was to be distributed indefinitely and for the exclusive benefit of the Shriners' Hospital for Crippled Children—a charitable remainder.

Petitioners claimed a charitable estate tax deduction of $130,477 for the present value of the charitable remainder. Respondent contends the correct actuarial value is $117,425.78;[13] thus, he proposes to disallow any deduction greater than $117,425.78.

Respondent concedes that the amount includable in decedent's gross estate attributable to decedent's transfer to the trust is $136,037.[14] Both parties compute the charitable

---

[13]Even though decedent died after Dec. 31, 1969, the deductibility of the charitable interest arising from an irrevocable transfer in trust before Oct. 9, 1969, is not subject to the same limitations as are applicable to the interest passing to charity with which we dealt in the first issue, *supra*. See sec. 20.2055–2(e)(3)(ii)(*b*), Estate Tax Regs.

[14]That amount is the date-of-death fair market value of the property minus the "consideration received" by decedent for relinquishment of her property. See sec. 2043.

deduction by subtracting from that included amount the present value of the surviving spouse's life estate. It is the present value of that life estate over which the parties disagree.

Petitioners contend the actuarial factor to be used to determine the value of the life estate is to be selected from section 20.2031–7, Estate Tax Regs., which assumes a 3½-percent return. Respondent contends section 20.2031–10, Estate Tax Regs., which assumes a 6-percent return, should apply. We agree with respondent.

The 3½-percent tables apply to estates of decedents dying on or before December 31, 1970. Sec. 20.2031–7(a)(1), Estate Tax Regs. Since the decedent in this case died in 1976, those tables do not apply. Instead, the 6-percent tables which apply to estates of decedents dying after December 31, 1970, govern the valuation of the life estate herein. Sec. 20.2031–10(a)(1), Estate Tax Regs.

Petitioners, citing *Estate of Simmie v. Commissioner*, 69 T.C. 890 (1978), affd. 632 F.2d 93 (9th Cir. 1980), argue the 3½-percent tables of section 20.2031–7, Estate Tax Regs., which were in effect in 1967 when the trust was created, should apply. In *Estate of Simmie*, we held, for purposes of section 2043, valuation must be made at the date of transfer and not at the date of death. However, we are not dealing with section 2043 in this case. Rather, we are determining value for purposes of the estate tax charitable deduction, and that valuation must be made at date of death. Sec. 20.2055–2(f)(1), Estate Tax Regs. Accordingly, section 20.2031–10, Estate Tax Regs., governs the valuation of the life estate, and the allowable deduction is limited to $117,425.78.[15]

---

[15]Petitioners make one other argument. At the time the trust was created, the value of the surviving spouse's life estate was smaller in proportion to the value of all trust assets, due to the fact that such life estate was contingent on the decedent's spouse surviving decedent. In determining the date-of-death value of the surviving spouse's life estate, petitioners seek to attribute that same smaller ratio of life estate value to trust assets value that existed at the time the trust was created. Petitioners' contention is both unsupported and without merit. All interests herein are valued at date of death regardless of any contingencies that may have existed before that date.

To reflect concessions and the foregoing,

*Decision will be entered under Rule 155.*

Reviewed by the Court.