EDWARD L. STEPHENSON TRUST, GIRARD BANK AND CHRISTINA BONDE STEPHENSON, TRUSTEES, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

MARY C. LEBLOND PROCTER & GAMBLE TRUST NO. 2, GIRARD BANK AND GARRICK C. STEPHENSON, TRUSTEES, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 3359–80, 3360–80.     Filed September 12, 1983.

*P. J. DiQuinzio* and *Frederick J. Gerhart*, for the petitioners.
*Crombie J. D. Garrett*, for the respondent.

OPINION

NIMS, *Judge*: These consolidated cases are before us on petitioners' motion for summary judgment pursuant to Rule 121.[1]

Respondent determined the following deficiencies in petitioners' Federal income tax:

| Docket No. | Year | Deficiency |
|---|---|---|
| 3359–80 | 1974 | $2,383.51 |
| | 1975 | 4,378.46 |
| 3360–80 | 1975 | 10,562.58 |

Christina Bonde Stephenson and Garrick C. Stephenson resided in Virginia and New York, respectively, when they filed the petitions in these cases. Girard Bank maintained its principal office in Pennsylvania when it filed the petitions in these cases.

---

[1] All Rule references are to the Tax Court Rules of Practice and Procedure. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954 as in effect during the years in issue.

These cases concern the recognition of multiple trusts as independent taxpaying entities. Two trusts are involved in each case. The respondent determined in each docket, pursuant to section 1.641(a)-0(c), Income Tax Regs. (hereinafter referred to as the consolidation regulation or simply as the regulation), that the two trusts should be consolidated into a single trust.

Petitioners maintain that the consolidation regulation is invalid and that each trust should be respected as an independent entity. They assert that they are entitled to a decision as a matter of law under *Estelle Morris Trusts v. Commissioner*, 51 T.C. 20 (1968) (Court reviewed), affd. per curiam 427 F.2d 1361 (9th Cir. 1970).

No genuine issue of any material fact is involved in deciding whether the consolidation regulation is valid and whether *Morris Trusts* applies to these cases. Accordingly, it is proper for us to decide these issues in considering petitioners' motion for summary judgment. Rule 121(b). If we decide that the regulation is invalid and that the *Morris Trusts* case controls these cases, then the petitioners will be entitled to a decision as a matter of law and their motion for summary judgment will be granted. But if we decide that the regulation is valid, then we must deny petitioners' summary judgment motion because application of the regulation requires review of contested factual issues. Rule 121(b).

### The Stephenson Trusts

By an instrument dated December 14, 1972, Edward L. Stephenson created two trusts: the Edward L. Stephenson Amanda (Amy) Stephenson Trust (hereafter referred to as the Stephenson Simple Trust), and a separate income accumulation trust (hereafter referred to as the Stephenson Accumulation Trust).

The initial corpus of the Simple Trust was 5,000 shares of Procter & Gamble Co. common stock. The Accumulation Trust corpus was composed entirely of distributions received from the Simple Trust and from its own accumulated income.

The trust instrument required the Stephenson Simple Trust to distribute all of its income currently. The trust instrument contained instructions for certain mandatory and discretionary income distributions to Edward L. Stephenson's daughter,

Amy Stephenson, and to one other named individual. Income not currently distributed to the named individuals was to be distributed to the Stephenson Accumulation Trust. During the years in issue, the Simple Trust distributed nearly all of its income to the Accumulation Trust.

The trust instrument allowed the Stephenson Accumulation Trust to distribute some or all of its income to Amy Stephenson. Income not distributed to her was added to the Accumulation Trust's principal.

The trustees of both Stephenson Trusts had the power to distribute corpus in certain circumstances. Also, Amy Stephenson was vested with the power to demand and receive, at two specified times, a part of the Simple Trust's corpus. The Accumulation Trust did not contain such a provision. Further, the trust instrument provided for alternative dispositions in case the beneficiaries untimely died. The trustees of both Stephenson Trusts had broad authority to manage the trusts, but the trust instrument directed the trustees to invest primarily in high-grade equities until Amy Stephenson reached age 25.

## The LeBlond Trusts

By an instrument dated June 6, 1969, Mary C. LeBlond created two trusts: the Mary C. LeBlond Procter & Gamble Trust No. 2 (hereafter referred to as the LeBlond Simple Trust), and a separate income accumulation trust (hereafter referred to as the LeBlond Accumulation Trust).

The initial corpus of the Simple Trust was 7,000 shares of Procter & Gamble Co. common stock. The Accumulation Trust corpus was composed entirely of distributions received from the Simple Trust and from its own accumulated income.

The trust instrument required the LeBlond Simple Trust to distribute all of its income currently. The trust instrument contained instructions for certain mandatory and discretionary income distributions to certain of Mary C. LeBlond's grandchildren. Income not currently distributed to the grandchildren was to be distributed to the LeBlond Accumulation Trust. During the years in issue, the Simple Trust distributed most, if not all, of its income to the Accumulation Trust.

The trust instrument allowed the LeBlond Accumulation Trust to distribute some or all of its income to the grandchil-

dren who were named as beneficiaries of the LeBlond Simple Trust. Income not distributed to the grandchildren was added to the Accumulation Trust's principal.

The trustees of both LeBlond trusts had the power to distribute corpus in certain circumstances. Also, the beneficiaries were vested with the power to demand and receive, at two specified times, a part of the Simple Trust's corpus. The Accumulation Trust did not contain such a provision. Further, the trust instrument provided for alternative dispositions in case the beneficiaries untimely died. The trustees of both LeBlond trusts had broad authority to manage the trusts, but the trust instrument directed the trustees to invest primarily in high-grade equities.

### Reporting Position and Respondent's Determination

Each trust filed a separate return for the years in issue. They reported the following amounts of taxable income and tax liability:

| Trust | Year | Taxable income[2] | Tax liability[3] |
|---|---|---|---|
| Stephenson Simple Trust | 1974 | $25,349.04 | $8,704.52 |
| Stephenson Accumulation Trust | 1974 | 4,134.03 | 719.49 |
| Stephenson Simple Trust | 1975 | 15,529.69 | 4,146.58 |
| Stephenson Accumulation Trust | 1975 | 9,060.39 | 1,926.91 |
| LeBlond Simple Trust | 1975 | 15,619.49 | 4,181.60 |
| LeBlond Accumulation Trust | 1975 | 20,588.12 | 6,352.30 |

Respondent determined under the consolidation regulation that the separate identity of the accumulation trusts should be disregarded. Accordingly, respondent consolidated the trusts and increased the taxable income and tax liability of the simple trusts as follows:

| Trust | Year | Increase in taxable income | Increase in tax liability |
|---|---|---|---|
| Stephenson Simple Trust | 1974 | $4,534.03 | $2,383.51 |
| | 1975 | 9,460.39 | 4,378.46 |
| LeBlond Simple Trust | 1975 | 20,988.12 | 10,562.58 |

---

[2]Figures taken from line 23, Form 1041.
[3]Figures taken from line 34, Form 1041.

## Analysis

The Treasury Department promulgated the regulation, under which respondent seeks to consolidate petitioners' trusts, in 1972. T.D. 7204, 1972–2 C.B. 352, 393. The consolidation regulation states:

> (c) *Multiple trusts.* Multiple trusts that have—
> (1) No substantially independent purposes (such as independent dispositive purposes),
> (2) The same grantor and substantially the same beneficiary, and
> (3) The· avoidance or mitigation of '(a) the progressive rates of tax (including mitigation as a result of deferral of tax) or (b) the minimum tax for tax preferences imposed by section 56 as their principal purpose,
>
> shall be consolidated and treated as one trust for the purposes of subchapter J.
> [Sec. 1.641(a)-0(c), Income Tax Regs.]

Petitioners contend that the consolidation regulation is invalid. Petitioners argue that *Estelle Morris Trusts v. Commissioner,* 51 T.C. 20 (1968) (Court reviewed), affd. per curiam 427 F.2d 1361 (9th Cir. 1970), governs these cases because it held that tax-avoidance motive is irrelevant in determining whether multiple trusts will be recognized for tax purposes.

Respondent maintains that the regulation is valid and that he properly consolidated the multiple trusts in these cases under its authority. Alternatively, if the regulation is held to be invalid, then respondent argues that *Morris Trusts* is distinguishable from these cases and that we should examine tax-avoidance motive in deciding whether to recognize the multiple trusts as independent entities.

The Commissioner has broad authority to promulgate all needful regulations. Sec. 7805(a); *United States v. Correll,* 389 U.S. 299, 306–307 (1967). Treasury regulations "must be sustained unless unreasonable and plainly inconsistent with the revenue statutes." *Commissioner v. South Texas Lumber Co.,* 333 U.S. 496, 501 (1948). Regulations, as constructions of the Code by those charged with its administration, "should not be overruled except for weighty reasons." *Bingler v. Johnson,* 394 U.S. 741, 750 (1969); *Commissioner v. South Texas Lumber Co., supra* at 501.

Although regulations are entitled to considerable weight, "respondent may not usurp the authority of Congress by adding restrictions to a statute which are not there." *Estate of Boeshore v. Commissioner*, 78 T.C. 523, 527 (1982). See *State of Washington v. Commissioner*, 77 T.C. 656 (1981), affd. 692 F.2d 128 (D.C. Cir. 1982). A regulation is not a reasonable statutory interpretation unless it harmonizes with the plain language, origin, and purpose of the statute. *United States v. Vogel Fertilizer Co.*, 455 U.S. 16 (1982); *Durbin Paper Stock Co. v. Commissioner*, 80 T.C. 252, 257 (1983). Where the statute's provisions are unambiguous, and its directive specific, the Commissioner has no power to amend it by regulation. *Koshland v. Helvering*, 298 U.S. 441, 447 (1936); *Arrow Fastener Co. v. Commissioner*, 76 T.C. 423 (1981).[4]

To evaluate the validity of the consolidation regulation it is essential to review the following developments in the law concerning multiple trusts which preceded the regulation's 1972 promulgation: the use of multiple trusts as permanent income-splitting devices, the 1968 *Morris Trusts* case which upheld such use of multiple trusts and the 1969 Act which eliminated some, but not all, of the tax benefits associated with multiple trusts. We will review each of these developments in turn.

### Multiple Trusts as Income-Splitting Devices

Generally, trusts are taxed as separate entities under subchapter J of the Internal Revenue Code. Sec. 641(b). However, trusts receive a deduction for amounts distributed or required to be distributed to the beneficiary. Secs. 651, 661. The beneficiary is taxed on amounts received from a trust during a year to the extent of the trust's distributable net income for that year. Secs. 652, 662. Subject to qualifications not relevant here, distributable net income means a trust's taxable income. Sec. 643(a). Therefore, a trust will have no tax

---

[4] The regulation in issue is an "interpretive" regulation issued under the general authority vested in respondent under sec. 7805 and is to be accorded less weight than "legislative" regulations issued pursuant to a specific congressional delegation of lawmaking authority. *Estate of Boeshore v. Commissioner*, 78 T.C. 523, 527 n. 5 (1982).

liability, and it will exist solely as a conduit, if it distributes or is required to distribute all of its income.

A trust is taxed at its own rates on accumulated income. Sec. 641(a). Under the basic approach of subchapter J (absent application of the throwback rule discussed *infra*), the following tax consequences occur when a trust makes a distribution which includes some accumulated income: the beneficiary is taxed at his own rates up to the trust's distributable net income for the year of distribution; the beneficiary is not taxed on amounts in excess of the trust's distributable net income. Thus, the accumulated income inures to the beneficiary, tax free. This result allows a permanent income split between the trust and the beneficiary as to the accumulated income. This income split lowers the total tax collected if the trust's effective tax rate is lower than the beneficiary's effective tax rate. Multiple trusts multiply this advantage because they each offer a separate chance to have some income taxed at the lower rates of the progressive rate system.

The 1954 Code enacted the so-called "five-year throwback rule" to modify the basic approach of subchapter J and to lessen the tax advantages of accumulation trusts. See generally *Estelle Morris Trusts v. Commissioner*, 51 T.C. at 39–40. When applicable, the throwback rule taxed the beneficiary on the receipt of accumulated income as he would have been taxed had he earlier received the income in the year in which the trust received such income. Secs. 665–669.

However, limits and exceptions restricted the throwback rule's effectiveness. The throwback rule only applied to accumulated income earned by the trust during the 5 years immediately preceding the accumulation distribution. Sec. 666(a). Also, the throwback rule did not apply to the following distributions: (1) Income accumulated before the beneficiary attained the age of 21; (2) accumulated income distributed to meet the emergency needs of the beneficiary; (3) the final distribution of the trust if such final distribution was made more than 9 years after the last transfer to the trust; (4) a distribution of accumulated income not exceeding $2,000 per year; and (5) certain periodic mandatory distributions under trusts created prior to 1954. Sec. 665(b).

These limits and exceptions made it possible in certain circumstances to avoid the original throwback rule. Accordingly, accumulation trusts remained an effective way to split income, and thus to lower taxes. See, e.g., Friedman & Wheeler, "Effective Use of Multiple Trusts," 16 N.Y.U. Inst. on Fed. Tax. 967, 981–987 (1958). The 1968 *Morris Trusts* case in effect legitimatized this planning technique by recognizing each multiple trust as a separate taxpaying entity regardless of tax-avoidance motive.

### The Morris Trusts Case

In *Morris Trusts*, the grantors created 20 trusts by executing 10 instruments. The trusts bought and sold various interests in real property. The dispositive provisions of each trust were identical except for the period for accumulation and termination. Respondent determined that the 20 trusts should be consolidated because the trust instruments did not effectively create 20 separate trusts. Alternatively, the respondent maintained that the multiple trusts should be consolidated under the principle that substance should triumph over form because the grantors created 20 trusts instead of two trusts principally for tax-avoidance purposes. Respondent relied on cases such as *Gregory v. Helvering*, 293 U.S. 465 (1935), and *Knetsch v. United States*, 364 U.S. 361 (1960), to support his second argument.

The trust instruments in the *Morris Trusts* case created 20 separate trusts. We found as a fact that each grantor and trustee was careful to "dot his i's and cross his t's" in respecting the form of 20 separate trusts. 51 T.C. at 45. We held as a matter of law that "a finding of tax-avoidance is simply not enough to invalidate multiple trusts." 51 T.C. at 44. Therefore, we concluded that the separate identity of each of the Morris Trusts would be respected for tax purposes.

Because the *Morris Trusts* case is central to deciding the cases currently before us, we will carefully review the basis of our holding in that case.

First, we noted that Congress sanctioned income splitting between the beneficiary and a single trust simply by recognizing trusts for tax purposes, generally. We concluded that, in dealing with 20 trusts, we were "concerned here only with a quantitative extension of the advantages of a single trust, a

difference in degree; and not with a qualitatively distinct phenomenon, that is a difference in kind." 51 T.C. at 39.

Second, we noted that Congress had not enacted a provision making tax-avoidance motive the touchstone of tax liability in the trust area, although it had done so in other areas such as sections 269, 306, 482, 532 and 1551. "To the contrary," we stated, "since the Revenue Act of 1916, which provided for the first time that trusts would be treated as separate taxable entities, the tax laws have recognized implicitly that trusts may be used as income-splitting devices." 51 T.C. at 39 (fn. ref. omitted).

Third, we determined that motive in establishing and maintaining multiple trusts instead of a single trust was irrelevant for tax purposes. We based this conclusion on the fact that Congress had declined to limit the tax-avoidance utility of multiple trusts despite repeated calls for reform. Following an extensive review of congressional consideration of the multiple trust issue we stated:

> In these circumstances the language of the Supreme Court in *American Automobile Assn. v. United States*, 367 U.S. 687, 697 (1961), is particularly apposite:
>
> "At the very least, this background indicates congressional recognition of the complications inherent in the problem and its seriousness to the general revenue. We must leave to the Congress the fashioning of a rule which, in any event, must have wide ramifications. The Committees of the Congress have standing committees expertly grounded in tax problems, with jurisdiction covering the whole field of taxation and facilities for studying considerations of policy as between the various taxpayers and the necessities of the general revenues. The validity of the long-established policy of the Court in deferring, where possible, to congressional procedures in the tax field is clearly indicated in this case.[12] * * * [Footnote omitted.]"
>
> See also *Commissioner v. Brown*, 380 U.S. 563, 578–580 (1965).
>
> We do not intend to imply that we believe congressional inaction here means complete sanction of tax avoidance through multiple accumulation trusts. Rather, we believe the lesson to be learned is that courts should be wary of broad-scale incorporation of the doctrine of "tax avoidance," or "business purpose," or "sham" in an area so fraught with its own particular problems and nuances. At the very least, we are required to limit those judicially developed doctrines to the situations which they were intended to cover.
>
> Given the foregoing legislative background, we think that the "business purpose" test of *Gregory* and the "economic reality" test of *Knetsch, Weller*, and *Goldstein* are inapposite. None of those cases involves a history of detailed consideration by the Congress of the specific problem presented.

Indeed, to have allowed the tax benefits sought in those cases would have frustrated the clearly defined legislative purposes of the controlling statutes. Moreover, we know that "business purpose" is often absent in donative dispositions of property through the device of the family trust. Cf. *Alden B. Oakes*, 44 T.C. 524, 532 (1965). Accordingly, a litmus test of "business purpose" on the part of the grantor will not suffice, and nothing in the legislative history of section 641(b), reviewed above, leads us to believe that tax-motivated trusts necessarily lie outside its plain meaning. Similarly, the continuing individual economic and legal viability of the Morris Trusts preclude the application of the "economic reality" test. Cf. *Irvine K. Furman*, 45 T.C. 360, 366 (1966), affirmed per curiam 381 F.2d 22 (C.A. 5, 1967).

After careful consideration, we are constrained to reach the conclusion that a finding of tax avoidance is simply not enough to invalidate multiple trusts. * * *

[51 T.C. at 42–44; fn. refs. omitted.]

Fourth, we found support for our conclusion in "the fact that the Supreme Court, in a case decided less than 3 years after *Gregory v. Helvering, supra*, held that amendments to a trust instrument were effective to create three separate taxable entities despite an express finding by the Board of Tax Appeals that the purpose of the amendments was 'to reduce liability for income taxes on the income of the trust.'" 51 T.C. at 45, citing *U.S. Trust Co. v. Commissioner*, 296 U.S. 481, 485 (1936).

Based on these four factors we concluded that trusts, like corporations and family partnerships, are not invalidated solely because the creator's principal aim was tax reduction. 51 T.C. at 44. Accordingly, we held that the 20 Morris Trusts would not be consolidated but would be respected as independent taxpaying entities.

The Circuit Court of Appeals in affirming our decision stated: "We adopt the views of the majority of the Tax Court and for the reasons stated in that opinion we affirm the judgments from which these consolidated appeals are taken." 427 F.2d at 1362.

## Tax Reform Act of 1969

Congress reconsidered the method of taxing trusts and beneficiaries in the Tax Reform Act of 1969, Pub. L. 91–172, 83 Stat. 487 (hereafter referred to as the 1969 Act). The 1969 Act made changes in subchapter J for the following reasons:

The progressive tax rate structure for individuals is avoided when a grantor creates trusts which accumulate income taxed at low rates, and the income in turn is distributed at a future date with little or no additional tax being

paid by the beneficiary, even when he is in a high tax bracket. This result occurs because the trust itself is taxed on the accumulated income rather than the grantor or the beneficiary. This means that the income in question, instead of being added on top of the beneficiary's other income and taxed at his marginal tax rate, is taxed to the trust at the starting tax rate. The throwback rule theoretically prevents this result, but the 5-year limitation and the numerous exceptions seriously erode the basic principle that a beneficiary who receives income from property should pay tax on that income at his (rather than the trust's) marginal rates.

*This avoidance device is compounded by the use of multiple trusts* —the creation of more than one accumulation trust by the same grantor for the same beneficiary. The splitting of the income among many taxable entities may result in still further reductions of the overall tax burden, since the accumulated income may be taxed to each separate trust at lower rates than would be the case if only one trust were created.[1] *Although the use of multiple trusts has been attacked by the Internal Revenue Service, the courts have held that such trusts are valid in some cases.*

*     *     *     *     *     *     *

The committee agrees with the House that taxpayers should not be allowed to utilize accumulation trusts to allow the beneficiaries of the trust either to escape paying tax on the income or to substantially minimize their tax on the income. The committee believes that beneficiaries of these accumulation trusts should be taxed in substantially the same manner as if the income had been distributed to the beneficiaries currently as it was earned. Thus, under the House bill and the committee amendments, the beneficiaries of accumulation trusts will be placed in substantially the same tax status as beneficiaries of trusts which distribute their income currently. This approach is essentially the same treatment as has been applicable to foreign accumulation trusts created by U.S. persons since the passage of the Revenue Act of 1962.

[1] The creation of multiple entities also serves to increase the number of $100 exemptions allowed to each trust as well as providing for the multiplication of exceptions to the throwback rule, especially advantageous in the case of the $2,000 exemption.

[S. Rept. 91–552, 91st Cong., 1st Sess. (1969), 1969–3 C.B. 423, 503–504. Emphasis added].

See also H. Rept. 91–413, 91st Cong., 1st Sess. (1969), 1969–3 C.B. 200, 258–259; Conf. Rept. 91–782, 91st Cong., 1st Sess. (1969), 1969–3 C.B. 644, 660.

The 1969 Act, among other changes not relevant in this case, eliminated the 5-year limitation and all exceptions to the throwback rule. Sec. 331 of the 1969 Act. As a result, accumulation distributions were to be "treated as if they had been distributed in the preceding years in which income was accumulated, but are includible [on that basis] in income of the

beneficiary for the [year of distribution]." H. Rept. 91–413, *supra*, 1969–3 C.B. at 259; S. Rept. 91–552, *supra*, 1969–3 C.B. at 505.

The Senate amended the House version of the bill to include an interest charge in the application of the throwback rule. Senate Report 91–552 explains the need for the interest charge as follows:

> The committee also modified the House bill to provide an interest charge to cover the tax payments by the income beneficiaries which are deferred by the use of accumulation trusts. This interest charge is based on the additional income tax which the beneficiary would have paid if the income originally had been taxed to the beneficiary instead of the trust. *The committee believes that this interest charge is necessary because, otherwise, the deferral of the payment of the additional tax* (i.e., from the time the income is taxed to the trust until the time when the remainder of the tax is paid on the accumulation distribution by the beneficiary) *amounts, in effect, to an interest-free loan to the beneficiary by the government.* [S. Rept. 91–552, *supra*, 1969–3 C.B. at 504–505. Emphasis added.]

Nonetheless, the conference eliminated the interest charge. Conf. Rept. 91–782, *supra*, 1969–3 C.B. at 660.

The consolidation regulation was promulgated in 1972 as part of a set of regulations designed to interpret the 1969 Act. T.D. 7204, 1972–2 C.B. 352.

## *The Consolidation Regulation Is Invalid*

Our review of the history of subchapter J and the restrictions on multiple trusts convinces us that the consolidation regulation is invalid because it adds restrictions not contained in the statute nor contemplated by Congress.[5] The grounds for our conclusion are: First, Congress consciously enacted clear rules in 1969 to eliminate some, but not all, of the tax benefits associated with multiple trusts. The consolidation regulation goes beyond the statute by eliminating *all* of the tax benefits of multiple trusts. Second, the consolidation regulation takes a subjective approach to the multiple trust issue. This approach conflicts with the objective approach adopted by Congress. Third, the regulation extends beyond the statute and exceeds

---

[5]We note that commentators contended that the consolidation regulation was invalid soon after it was promulgated. E.g., Newman & Kalter, "Consolidation of Multiple Trusts," 27 Tax Law Rev. 561 (1972).

congressional intent by purporting to overrule the *Morris Trusts* case.

We will discuss these grounds for our decision separately. Then we will consider respondent's argument that the legislative reenactment doctrine insulates the consolidation regulation from critical judicial review. Finally, we will consider respondent's argument that we should consider tax-avoidance motive, even if the regulation is invalid, because the *Morris Trusts* case is distinguishable from these cases.

### Clear and Limited Rules Enacted by the 1969 Act

Congress carefully considered the tax-avoidance potential of multiple trusts in 1969. It recognized that trusts could be used to avoid the progressive tax rate structure. S. Rept. 91–552, *supra*, 1969–3 C.B. at 503–504. It also realized that "This avoidance device is compounded by the use of multiple trusts." S. Rept. 91–552, *supra*, 1969–3 C.B. at 504. Congress further acknowledged that the *Morris Trusts* case sanctioned this planning device by noting that "Although the use of multiple trusts has been attacked by the Internal Revenue Service, the courts have held that such trusts are valid in some cases." S. Rept. 91–552, *supra*, 1969–3 C.B. at 504.

Congress enacted clear rules to eliminate some, but not all, of the tax benefits associated with multiple trusts. The unlimited throwback rule eliminated the use of trusts as permanent income-splitting devices by imposing an additional tax which eliminated any advantageous tax rate differential between the trust and the beneficiary. The throwback rule accomplished this result by including in the beneficiary's tax liability for the year of distribution, a partial tax equal to the aggregate of taxes for which the beneficiary would have been liable, had the beneficiary received the accumulated income during the years in which the trust earned such income.[6] Sec. 668(b), I.R.C. 1954, as in effect in 1970. The beneficiary was allowed a credit for taxes paid by the trust on the accumulated income. Sec. 667(b), I.R.C. 1954, as in effect in 1970. The throwback rule thus imposed an additional tax on a benefici-

---

[6]The 1969 Act also included an alternative method for calculating the partial tax which was designed to approximate the true throwback result but which was easier to apply. Sec. 668(b)(1)(B), I.R.C. 1954, as in effect in 1970.

ary in the amount by which the beneficiary's tax liability on the accumulated income, had he received it directly, exceeded the trust's tax liability on such income. Therefore, the throwback rule prevented permanent income splitting because the additional tax eliminated the tax savings which previously existed when the trust's tax rate was lower than the beneficiary's tax rate.

The throwback rule did not prevent the taxpayer-beneficiary from deferring the additional tax from the year in which the trust earned the income to the year in which the trust distributed the income to the beneficiary. This deferral allowed the trust to invest the amount of the additional tax until distribution, thus generating more money for the beneficiary than would have been the case if the beneficiary had been taxed on the income when earned. Of course, multiple trusts multiplied the advantage of such deferral benefits.

Congress consciously decided to allow the benefit of such deferral. The Senate realized that the deferral offered by the throwback rule would mean that trusts would continue to be attractive tax-avoidance devices. S. Rept. 91–552, *supra*, 1969–3 C.B. at 504–505. As previously noted, the Senate amended the bill to include an interest charge to eliminate deferral, but the House and Senate conferees eliminated the interest charge. Conf. Rept. 91–782 (1969), 1969–3 C.B. at 660.

In addition to deferral, the 1969 Act sanctioned a multiple trust tax benefit in the newly enacted minimum tax provisions. Section 56, I.R.C. 1954, as in effect in 1970, allowed a $30,000 exemption from minimum tax liability. Section 58(c) allowed a separate $30,000 exemption for each accumulation trust. This provision lowered the accumulation trust's effective tax rate when compared to the beneficiary's rate, thus increasing the amount deferred by operation of the throwback rule. Naturally, multiple trusts multiplied this advantage.

Congress intended that each multiple trust would be entitled to a full $30,000 exemption. When it enacted the minimum tax provisions, Congress was carefully considering the multiple trust issue, including the *Morris Trusts* holding that each trust constituted a separate taxpaying entity. Yet Congress did nothing to limit the availability of a full minimum tax exemption to each trust, although it did so in other contexts. For example, Congress restricted related

corporations to one minimum tax exemption. Sec. 58(b), I.R.C. 1954, as in effect in 1970; sec. 301 of the 1969 Act. Also, in the multiple trust area, Congress had previously limited the availability of the basic income tax exemption for trusts in response to perceived abuses. Sec. 642(b); (*Estelle Morris Trusts v. Commissioner*, 51 T.C. at 39–40, discusses the historical context of this action). These facts convince us that Congress was aware of the multiple trust issue and could have limited the minimum tax exemption available to multiple trusts had it wanted to. It did not so limit the exemption. Accordingly, we conclude that Congress intended that each multiple trust would be entitled to a full $30,000 minimum tax exemption.

In summary, a review of the 1969 Act shows that Congress deliberately eliminated some, but not all, of the tax benefits associated with multiple trusts. Congress eliminated trusts as permanent income-splitting devices, but it went no further. Congress decided that trusts could be used for deferral and that each trust was entitled to a separate minimum tax exemption. In contrast, the consolidation regulation specifically states that forming multiple trusts for the principle purpose of obtaining these deferral and minimum tax benefits is forbidden. Sec. 1.641(a)-0(c)(3), Income Tax Regs. The regulation disallows benefits allowed by the statute and thus conflicts with the plain intent of Congress. Therefore, the regulation is invalid.

Further, Congress intended that the unlimited throwback rule would be the exclusive method for dealing with multiple trusts. Congress carefully reviewed the multiple trust issue and acknowledged that *Morris Trusts* sanctioned the use of multiple trusts as planning tools. Yet Congress neither eliminated the principle that trusts are separate taxpaying entities nor did it adopt a special rule for multiple trusts, such as respondent's consolidation approach. Congress, in fact, sanctioned the use of multiple trusts to obtain certain tax benefits. These facts convince us that Congress intended the unlimited throwback rule to be the only response to the multiple trust issue. Accordingly, the consolidation regulation is invalid because it adds restrictions not contained in the carefully considered and clearly limited statutory provisions.

*Subjective Approach*

We are further convinced that respondent's regulation is not supported by the statute, nor could it be considered a reasonable interpretation thereof, because it takes an approach to the multiple trust problem which is completely different from the congressional approach. Congress decided to attack the multiple trust problem by retaining and refining the throwback rule, which it originally enacted in 1954. The throwback rule provides an objective approach to the trust problem. It is clear and precise, although complicated. By contrast, respondent's consolidation regulation takes a subjective approach. It focuses on factors such as tax-avoidance purpose to resolve the multiple trust issue.

Congress rejected the subjective approach to the multiple trust problem when it chose the objective approach. The subjective approach of the regulation would generate intense factual disputes concerning the grantor's motive for establishing the trust. Also, this approach would lead to uncertainty in application of the rules of subchapter J. For example, consolidation in this case would turn the Stephenson Simple Trust and the LeBlond Simple Trust into accumulation trusts, with concomitant changes in tax treatment. Having such results turn on subjective factors, and the uncertainty which such an approach would entail, are alien to the clear technical rules of subchapter J. If Congress intended to import such a change in the system of taxing trusts and beneficiaries, it would have said so explicitly. The legislative history contains no reference to the subjective concerns which motivate the regulation. Therefore, we conclude that the consolidation regulation is not a reasonable interpretation of the statute and is invalid.

*Congressional Awareness of Morris Trusts*

The fact that Congress knew of the *Morris Trusts* case but did not overrule it deserves emphasis. In *Morris Trusts*, we rejected the consolidation approach and held that multiple trusts would be respected as separate taxpaying entities. Congress was aware of this decision and concerned with its implications when it passed the 1969 Act, which to a certain extent was a response to *Morris Trusts*. However, Congress did not alter the status of trusts as separate taxpaying entities nor did it add a tax-avoidance motive provision to the statute. Instead, Congress eliminated some, but not all, of the tax

benefits associated with multiple trusts. These facts convince us that Congress decided not to overrule the *Morris Trusts* holding that multiple trusts would be respected for tax purposes. Therefore, the consolidation regulation is invalid because it goes beyond the statute and exceeds congressional intent in purporting to overrule the *Morris Trusts* case.

It appears that the respondent, after losing in the courts and after failing to persuade Congress to adopt the consolidation approach, enshrined his litigating position as a regulation. We cannot now sanction a position which has already been so thoroughly repudiated.

### Reenactment Doctrine

Respondent argues that Congress tacitly approved the consolidation regulation since it did not overrule the regulation when it reconsidered the multiple trust problem in 1976. We disagree. The 1976 Act shows, even more clearly than the 1969 Act, that Congress intended that multiple trusts would be respected as independent taxpaying entities.

Under the legislative reenactment doctrine, "Treasury regulations and interpretations long continued without substantial change, applying to unamended or substantially reenacted statutes, are deemed to have received congressional approval and have the effect of law." *Helvering v. Winmill*, 305 U.S. 79, 83 (1938). See generally *Helvering v. R. J. Reynolds Tobacco Co.*, 306 U.S. 110 (1939).

The legislative reenactment doctrine does not apply to the multiple trust consolidation regulation. The 1976 Act added a new provision to subchapter J which is fundamentally inconsistent with respondent's consolidation regulation, which, as previously noted, was promulgated in 1972. T.D. 7204, *supra.*

Congress reconsidered the method of taxing trusts and beneficiaries in the Tax Reform Act of 1976, Pub. L. 94–455, 90 Stat. 1525 (hereafter referred to as the 1976 Act).[7] Congress

---

[7]Congress decided that further changes were necessary in subch. J for the following reasons:

"The progressive tax rate structure for individuals is avoided if a grantor creates a trust to accumulate income taxed at low rates, and the income in turn is distributed at a future date with little or no additional tax being paid by the beneficiary, even when he is in a high tax bracket. This result occurs because the trust itself is taxed on the accumulated income rather than the grantor or the beneficiary.

remained concerned about the tax-avoidance potential of multiple trusts. H. Rept. 94–658, 94th Cong., 1st Sess. (1975), 1976–3 C.B. (Vol. 2), 695, 876. To eliminate the benefits arising from the use of three or more trusts, Congress added to the Code section 667(c), the so-called Third Trust Rule, which provides as follows:

SEC. 667(c). SPECIAL RULE FOR MULTIPLE TRUSTS.—

(1) IN GENERAL.—If, in the same prior taxable year of the beneficiary in which any part of the accumulation distribution from a trust (hereinafter in this paragraph referred to as "third trust") is deemed under section 666(a) to have been distributed to such beneficiary, some part of prior distributions by each of 2 or more other trusts is deemed under section 666(a) to have been distributed to such beneficiary, then subsections (b) and (c) of section 666 shall not apply with respect to such part of the accumulation distribution from such third trust.

(2) ACCUMULATION DISTRIBUTIONS FROM TRUST NOT TAKEN INTO ACCOUNT UNLESS THEY EQUAL OR EXCEED $1,000.—For purposes of paragraph (1), an accumulation distribution from a trust to a beneficiary shall be taken into account only if such distribution, when added to any prior accumulation distributions from such trust which are deemed under section 666(a) to have been distributed to such beneficiary for the same prior taxable year of the beneficiary, equals or exceeds $1,000.

Respondent argues that Congress knew of the regulation and desired that both the statute's Third Trust Rule and the regulation's consolidation approach be used to combat multiple trusts. We cannot agree. Nothing in the legislative history indicates that Congress took into consideration the consolida-

---

"The throwback rule (as amended by the Tax Reform Act of 1969) theoretically prevents this result by taxing beneficiaries on distributions they receive from accumulation trusts in substantially the same manner as if the income had been distributed to the beneficiaries currently as it was earned. The 1969 act made a number of significant revisions in the treatment of accumulation trusts. * * * *In the case of multiple trusts, however, the committee is concerned about the potential tax avoidance use of such trusts. As a result, the committee provided a special rule in the case of accumulation distributions received by any beneficiary from three or more trusts.* * * *

"Your committee has also reviewed other aspects of the tax treatment of accumulation trusts and provided modifications to make the rules easier to apply and be administered. For example, the committee provided an exemption for the income accumulated in a trust during the minority of a beneficiary, as was provided in the law under the throwback rule before 1969.

"[H. Rept. 94–658, 94th Cong., 1st Sess. (1975), 1976–3 C.B. (Vol. 2) 695, 876–877. Emphasis added.]"

See also S. Rept. 94–938, 94th Cong., 2d Sess. (1976), 1976–3 C.B. (Vol. 3) 49, 208–209; Staff of Joint Committee on Taxation, 94th Cong., 2d Sess., General Explanation of the Tax Reform Act of 1976, 1976–3 C.B. (Vol. 2) 1, 172–173.

tion regulation. Also, the Third Trust Rule provides a clear and detailed method which is inconsistent with the consolidation approach contained in the regulation.

The Third Trust Rule eliminates a beneficiary's credit for taxes previously paid by third and additional trusts. Sec. 665, I.R.C. 1954, as in effect in 1977. This rule strongly discourages the use of three or more trusts because it taxes accumulated income twice, once at the trust level and once at the beneficiary level. The Third Trust Rule, however, does not apply to the first two trusts or to any de minimis trusts. Thus the Third Trust Rule clearly requires that the multiple trusts which are excepted from its application must be respected as separate taxpaying entities. The fact that the Third Trust Rule specifically sanctions the separate identity of some trusts which the regulation would consolidate, clearly refutes respondent's position that Congress intended the Code amendment and the disputed regulation to be applied in pari materia.

Also, the operation of the Third Trust Rule assumes that the third and additional trusts will be respected as independent taxpaying entities. By eliminating the taxes paid credit, the Third Trust Rule does not consolidate or otherwise eliminate the separate identity of the third and additional trusts, per se. Instead, it assumes that a taxpayer is entitled to form and use such multiple trusts as individual entities. The Third Trust Rule merely makes it expensive (and thus uneconomical) for taxpayers to form such additional trusts. It follows that the approach established by the statute recognizes that all multiple trusts are to be respected as separate taxpaying units. The regulation which consolidates multiple trusts is antithetical to this statutory scheme. Therefore, we cannot agree with respondent that Congress wanted these two approaches to coexist.

Further, the 1976 Act provided the following interest charge for foreign accumulation trusts to eliminate the deferral benefit inuring to such trusts:

SEC. 668. INTEREST CHARGE ON ACCUMULATION DISTRIBUTIONS FROM FOREIGN TRUSTS.

(a) GENERAL RULE.—For purposes of the tax determined under section 667(a), the interest charge is an amount equal to 6 percent of the partial tax computed under section 667(b) multiplied by a fraction—

(1) the numerator of which is the sum of the number of taxable years between each taxable year to which the distribution is allocated under

section 666(a) and the taxable year of the distribution (counting in each case the taxable year to which the distribution is allocated but not counting the taxable year of the distribution), and

(2) the denominator of which is the number of taxable years to which the distribution is allocated under section 666(a).

(b) LIMITATION.—The total amount of the interest charge shall not, when added to the total partial tax computed under section 667(b), exceed the amount of the accumulation distribution (other than the amount of tax deemed distributed by section 666(b) or (c)) in respect of which such partial tax was determined.

[Sec. 668, I.R.C. 1954, as in effect in 1977.]

The fact that Congress did not extend the interest charge to domestic trusts is a reaffirmance of the congressional decision in 1969 to allow such deferral. Our review of the 1976 Act convinces us that the consolidation regulation, which adds restrictions not contained in the carefully considered congressional approach, is invalid.

### Is Morris Trusts Distinguishable?

Respondent argues that we should review the motives for establishing the Stephenson and LeBlond trusts as a matter of common law, even if the consolidation regulation is invalid. In *Morris Trusts* we rejected respondent's argument that tax-avoidance motive invalidated multiple trusts as a matter of common law. Respondent contends that *Morris Trusts* is distinguishable and that motive should be relevant in these cases. We disagree.

Respondent asserts that *Morris Trusts* is distinguishable from the present cases because of differences in the types of trusts involved. In *Morris Trusts*, each of the multiple trusts was an accumulation trust, whereas the trusts in each of these cases consist of one simple trust and one accumulation trust. Respondent contends that the tax benefits which inure to the pour-over trust situation were neither contemplated nor sanctioned by this Court in *Morris Trusts*.

Respondent's argument is meritless. *Morris Trusts* requires only that the grantors and trustees "dot his i's and cross his t's" in establishing and maintaining the form of separate multiple trusts. 51 T.C. at 45. So long as the form has been respected, *Morris Trusts* holds that each multiple trust will be treated as a separate taxpaying entity. Tax-avoidance motive is irrelevant in determining whether or not the independent

identity of multiple trusts will be respected for tax purposes. 51 T.C. at 44–45. In sum, *Morris Trusts* articulates a broad principle that multiple trusts may be used as separate taxpaying entities for purposes of minimizing taxes. Accordingly, the particular structure of the trusts or the peculiar nature of the tax benefits sought by the taxpayer in actualizing his tax-avoidance motive also is irrelevant in determining whether multiple trusts should be respected as independent entities for tax purposes.

Respondent does not argue that the grantors and trustees in these cases failed to dot all the i's and cross all the t's in respecting the form of the trusts. Certainly, on the facts presented to us, each trust had its own corpus during the years in issue and their separate identities were respected by the parties. Accordingly, we reject respondent's attempt to distinguish *Morris Trusts* as meritless. The *Morris Trusts* principle applies in these cases to require that each trust be respected as a separate entity.

### Conclusion

We hold that the consolidation regulation, sec. 1.641(a)-0(c), Income Tax Regs., is invalid. On the basis of undisputed facts, we further hold that the Stephenson Simple and Accumulation Trusts and the LeBlond Simple and Accumulation Trusts will be recognized as separate taxpaying entities. As this question is the only issue presented in these cases, petitioners are entitled to decisions as a matter of law. Petitioners' motion for summary judgment will be granted.

*Appropriate orders and decisions will be entered.*

Reviewed by the Court.