BRICKLAYERS BENEFIT PLANS OF DELAWARE VALLEY, INC., PETITIONER V. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 14566–79.     Filed October 13, 1983.

*Benjamin S. Ohrenstein*, for the petitioner.
*Howard Philip Newman*, for the respondent.

## OPINION

FAY, *Judge*: Respondent determined a deficiency of $51 in petitioner's Federal income tax for its fiscal year ended June 30, 1976. The only issue is whether petitioner is a tax-exempt organization as described in section 501(c)(9).[1]

The facts have been fully stipulated and are so found.

Petitioner Bricklayers Benefit Plans of Delaware Valley, Inc., is a Pennsylvania nonprofit corporation. Its principal place of business was Philadelphia, Pa., when the petition was filed herein.

In 1971, the trustees of several employee benefit welfare funds and pension funds organized petitioner for the sole purpose of providing administrative services on behalf of their funds. The trustees' funds, which had been previously established pursuant to collective bargaining agreements entered into by several bricklaying companies and the unions representing their employees, were designated as "Charter Fund Members" in petitioner's "By-laws."[2]

Petitioner initially had eight "Charter Fund Members," but due to the merger of some of the unions, during the year in issue that number was reduced to six. All six of these "Charter Fund Members" (herein the member funds) had previously been granted tax-exempt status by respondent, three as employee benefit welfare funds under section 501(c)(9) and three as pension funds under section 401(a).

---

[1] All section references are to the Internal Revenue Code of 1954 as amended and in effect during the taxable year in issue.

[2] Petitioner's "By-laws" do not set forth what it meant to be a "Charter Fund Member."

In providing administrative services for the member funds, petitioner collected employer contributions, distributed employee benefits, maintained all records, and provided information to all parties involved. Prior to petitioner's formation, the member funds either hired their own administrators or contracted with a commercial third party to perform the administrative services now provided by petitioner.

During the year in issue, petitioner also performed similar services for seven employee benefit funds which were not designated as "Charter Fund Members" in its "By-laws." Petitioner charged those seven nonmember funds a total of $21,193 and its member funds a total of $123,985, for such services during that year.

Petitioner's application for recognition as a tax-exempt organization under section 501(c)(9) was denied by respondent in his letter dated February 25, 1972. Petitioner subsequently sent respondent a protest letter dated April 21, 1972. On September 13, 1976, petitioner filed a corporate tax return for its fiscal year ended June 30, 1976, and paid Federal income taxes of $51 for that year. On October 13, 1977, petitioner filed an amended return claiming a refund of this amount based on its assertion that it was a tax-exempt organization under section 501(c)(9). Respondent granted this refund to petitioner. In his notice of deficiency, respondent once again determined that petitioner did not qualify as a tax-exempt organization for its taxable year ended June 30, 1976.

The only issue before us is whether petitioner qualifies as a tax-exempt organization under section 501(c)(9). In order to achieve tax-exempt status under section 501(c)(9), an organization must provide for the payment of "life, sick, accident, or other benefits" to its members. Section 1.501(c)(9)–3(d), Income Tax Regs., defines the term "other benefits" as follows:

The term "other benefits" includes only benefits that are similar to life, sick, or accident benefits. A benefit is similar to a life, sick, or accident benefit if—

(1) It is intended to safeguard or improve the health of a member or a member's dependents, or

(2) It protects against a contingency that interrupts or impairs a member's earning power.

The regulations also specifically state that "other benefits" do not include pension or annuity benefits payable at the time of

mandatory or voluntary retirement. Sec. 1.501(c)(9)–3(f), Income Tax Regs. See also sec. 1.501(c)(9)–3(b), Income Tax Regs.

The parties agree that petitioner provides for the payment of pension benefits since three of its six members are pension funds.[3] They also agree that the regulations properly define the term "other benefits" to include only benefits that are similar to life, sick, or accident benefits. Petitioner contends, however, that pension benefits are similar to life, sick, or accident benefits, and that the regulations are unreasonable and inconsistent with the language of the statute to the extent they conclude otherwise. Petitioner therefore asks us to invalidate the regulations to the extent they prohibit tax-exempt status under section 501(c)(9) for organizations providing for the payment of pension benefits. For the following reasons, we reject petitioner's contention.

The Commissioner has broad authority to promulgate all necessary regulations. Sec. 7805(a); *United States v. Correll*, 389 U.S. 299, 306–307 (1967). The general rule regarding Treasury regulations is that they must be sustained unless they are unreasonable and plainly inconsistent with the statute. *Commissioner v. South Texas Lumber Co.*, 333 U.S. 496, 501 (1948). A regulation is not a reasonable statutory interpretation unless it harmonizes with the plain language of the statute, its origins, and its purpose. *National Muffler Dealers Assn. v. United States*, 440 U.S. 472, 477 (1979). Because they constitute contemporaneous constructions by those charged with administration of these statutes, they "should not be overruled except for weighty reasons." *Bingler v. Johnson*, 394 U.S. 741, 750 (1969); *Commissioner v. South Texas Lumber Co., supra* at 501.

Applying these rules to section 1.501(c)(9)–3(f), Income Tax Regs., we find this regulation is reasonable and consistent with section 501(c)(9). The regulations define "other benefits" to include benefits which either safeguard or improve the health of an employee or protect him in case of an unexpected interruption in his ability to work. Sec. 1.501(c)(9)–3(d), Income

---

[3]Arguably, petitioner does not provide for the payment of any benefits, but instead it merely provides administrative services for other associations that do provide for the payment of such benefits. If petitioner did not provide for the payment of benefits, it would clearly fall outside the coverage of sec. 501(c)(9). However, respondent does not raise this argument and, thus, it is unnecessary for us to consider it.

Tax Regs. Assuming, as the parties agree, that "other benefits" include only benefits that are similar to life, sick, or accident benefits, this strikes us as a reasonable interpretation of the statute.

Consistent with this interpretation, section 1.501(c)(9)–3(f), as well as section 1.501(c)(9)–3(b), Income Tax Regs., excludes associations providing for the payment of pension benefits from the coverage of section 501(c)(9) since pension benefits do not safeguard or improve an employee's health or provide protection against unexpected events. Pension benefits become payable by reason of the passage of time, not as the result of an unanticipated event. Their receipt after retirement is an expected occurrence, and they are not intended to safeguard or protect against interruptions in an employee's ability to earn a living. On this basis, we conclude that the regulations reasonably exclude associations providing for the payment of pension benefits from qualifying for tax-exempt status under section 501(c)(9).[4]

This conclusion is certainly consistent with the fact that Congress has specifically provided tax-exempt status for qualified pension trust funds under section 401(a). Although three of petitioner's member funds were qualified pension trust funds under section 401(a), petitioner is an association of pension and welfare funds, not a qualified pension fund. We doubt Congress intended that such an association providing pension benefits which could not achieve tax-exempt status under section 401(a) could nevertheless qualify for tax-exempt status under the far less stringent requirements of section 501(c)(9). To hold otherwise would effectively undermine congressional efforts in this area to ensure that pension plans do not discriminate against any group of employees. See

---

[4]Petitioner alternatively argues that if it is reasonable to exclude pension benefits under sec. 501(c)(9), then sec. 1.501(c)(9)–3(e), Income Tax Regs., which permits vacation, severance, and child care benefits to qualify under sec. 501(c)(9), must be unreasonable and inconsistent with the statute. Petitioner fails to see how such benefits are consistent with respondent's argument that "other benefits" are benefits which protect employees against unexpected events. We, however, do not need to address this argument, because respondent did not rely on this portion of the regulations in denying petitioner tax-exempt status. We are upholding sec. 1.501(c)(9)–3(f), and sec. 1.501(c)(9)–3(b), Income Tax Regs., without determining the validity of sec. 1.501(c)(9)–3(e), Income Tax Regs. See *Arrow Fastener Co. v. Commissioner*, 76 T.C. 423, 430 (1981); *Citizen's National Bank of Waco v. United States*, 417 F.2d 675, 679 (5th Cir. 1969).

*Engineered Timber Sales Inc. v. Commissioner*, 74 T.C. 808, 823 (1980).

Furthermore, petitioner fails to qualify as a voluntary employees' beneficiary association under section 501(c)(9) because it is not an association of employees. Sec. 1.501(c)(9)–1(a), Income Tax Regs. The meaning of the term "employee" is defined in section 1.501(c)(9)–2(b), Income Tax Regs., as follows:

Whether an individual is an "employee" is determined by reference to the legal and bona fide relationship of employer and employee. The term "employee" includes the following:

(1) An *individual* who is considered an employee:

(i) For employment tax purposes under Subtitle C of the Internal Revenue Code and the regulations thereunder, or

(ii) For purposes of a collective bargaining agreement,

whether or not the *individual* could qualify as an employee under applicable common law rules.

\* \* \* \* \* \* \*

(2) An *individual* who became entitled to membership in the association by reason of being or having been an employee. \* \* \*

(3) The surviving spouse and dependents of an employee \* \* \*

[Emphasis added.]

Clearly, petitioner is not an association of employees within the meaning of section 501(c)(9).[5] Its members are tax-exempt welfare and pension funds, not individual employees. Although the member funds are associations of individual employees, we find no basis for concluding that petitioner is therefore an association of those employees. Petitioner is in essence a cooperative of tax-exempt organizations, not an association of employees within the meaning of section 501(c)(9). Although petitioner's member funds have already been granted tax-exempt status by respondent, grouping them together to form petitioner does not therefore create a tax-exempt voluntary employees' beneficiary association under section 501(c)(9).

Accordingly, for the above reasons, we sustain respondent's determination that petitioner is not a voluntary employees'

---

[5]On this point, see sec. 1.501(c)(9)–2(a)(1), Income Tax Regs., which is effective for taxable years beginning after Dec. 31, 1980.

beneficiary association as described in section 501(c)(9) and thus, it is not entitled to exemption from Federal income tax.[6]
To reflect the foregoing,

*Decision will be entered for the respondent.*

---

[6]Respondent also argues petitioner is not a tax-exempt organization because it is a "feeder organization" described in sec. 502. It is unnecessary for us to address this issue in light of our holding that petitioner is not an organization described in sec. 501(c)(9).