THE ANN JACKSON FAMILY FOUNDATION, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 28883-89.          Filed November 12, 1991.

*Robert L. Miller* and *George R. Dirkes,* for the petitioner.
*Gordon L. Gidlund, Ann M. Murphy,* and *Cynthia K. Hustad,* for the respondent.

OPINION

TANNENWALD, *Judge:* Respondent determined deficiencies in and additions to petitioner's Federal excise tax as follows:

| Year ending | First tier tax sec. 4942(a) [1] | Second tier tax sec. 4942(b) | Additions to tax sec. 6651(a)(1) |
|---|---|---|---|
| 5/31/84 | $36,627 | - - - | $9,157 |
| 5/31/85 | 77,976 | - - - | 19,494 |
| 5/31/86 | 122,262 | - - - | 30,565 |
| 5/31/87 | 122,262 | - - - | 30,565 |
| 5/31/88 | 122,262 | - - - | 30,565 |
| 5/31/89 | 122,262 | - - - | 30,565 |
| 9/25/89 | - - - | $815,079 | - - - |

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code as amended and in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

After concessions by respondent the issues remaining for decision are: (1) Whether petitioner is liable for excise taxes under section 4942(a) for failure to distribute income for taxable years ending May 31, 1984, through May 31, 1987; and (2) whether petitioner is liable for additions to tax for failure to file a tax return under section 6651(a)(1) for the same taxable years.

This case was submitted fully stipulated pursuant to Rule 122(a). All the facts are stipulated and are so found. The stipulation of facts and attached exhibit are incorporated by reference.

Petitioner was located in Santa Barbara, California, at the time the petition in this case was filed. Petitioner filed Forms 990-PF, Return of Private Foundation, for taxable years ending May 31, 1984, through May 31, 1989, with the Internal Revenue Service at Fresno, California. Petitioner did not file Form 4720 for any of the years at issue.

Petitioner is a private, nonoperating foundation incorporated in California on December 1, 1978. It is exempt from tax under section 501(a).

Ann Gavit Jackson (Jackson) created The Ann Jackson Family Charitable Trust (trust) on February 28, 1979. On April 2, 1979, Jackson transferred $5 million to the trust. The terms of the trust require the trustees to distribute to petitioner, "in quarterly or more frequent installments, an annual amount equal to seven percent (7%) of the initial net fair market value of the trust estate." [2] These distributions are to continue for 20 years at which point the remainder is to be distributed for the benefit of specified descendants of Jackson.

The trust is a split-interest trust as defined by section 4947(a)(2). The trust made distributions of $350,000 to petitioner in each of the taxable years ending May 31, 1983, May 31, 1984, and May 31, 1985.

Section 4942(a) imposes a 15-percent excise tax on the undistributed income of private foundations.[3] The remainder of section 4942 provides in pertinent part:

---

[2]This equals $350,000 ($5 million x .07).

[3]There are exceptions to the excise tax not applicable in this case.

SEC. 4942(c). UNDISTRIBUTED INCOME.—For purposes of this section, the term "undistributed income" means, with respect to any private foundation for any taxable year as of any time, the amount by which—

(1) the *distributable amount* for such tax year, exceeds

(2) the qualifying distributions made * * * out of such distributable amount.

(d) DISTRIBUTABLE AMOUNT.—*For purposes of this section, the term "distributable amount" means, with respect to any foundation for any taxable year, an amount equal to—*

(1) *the sum of the minimum investment return plus the amounts described in subsection (f)(2)(C),*[4] reduced by

(2) the sum of the taxes imposed on such private foundation for the taxable year under subtitle A and section 4940.

(e) MINIMUM INVESTMENT RETURN.—

(1) IN GENERAL.—For purposes of subsection (d), the minimum investment return for any private foundation for any taxable year is 5 percent of the excess of—

(A) the aggregate fair market value of all assets of the foundation other than those which are used (or held for use) directly in carrying out the foundation's exempt purpose, over

(B) the acquisition indebtedness with respect to such assets (determined under section 514(c)(1) without regard to the taxable year in which the indebtedness was incurred).

[Emphasis added.]

## Section 53.4942(a)-2, Foundation Excise Tax Regs. (the regulation), provides in pertinent part:

(a) Undistributed income. For purposes of section 4942, the term "undistributed income" means, with respect to any private foundation for any taxable year as of any time, the amount by which—

(1) The distributable amount (as defined in paragraph (b) of this section) for such taxable year, exceeds

(2) The qualifying distributions (as defined in sec. 53.4942(a)-3) made before such time out of such distributable amount.

(b) Distributable amount—(1) In general. For purposes of paragraph (a) of this section, the term "distributable amount" means—

(i) For taxable years beginning before January 1, 1982, an amount equal to the greater of the minimum investment return (as defined in paragraph (c) of this section) or the adjusted net income (as defined in paragraph (d) of this section); and

(ii) For taxable years beginning after December 31, 1981, an amount equal to the minimum investment return (as defined in paragraph (c) of this section),

---

[4]There are no such amounts involved herein. The reference to subsec. (f)(2)(C) was added by sec. 304(b) of the Deficit Reduction Act of 1984, Pub. L. 98-369, 98 Stat. 783, and applies to taxable years beginning after Dec. 31, 1984.

reduced by the sum of the taxes imposed on such private foundation for such taxable year under subtitle A of the Code and section 4940, and increased by the amounts received from trusts described in subparagraph (2) of this paragraph.[5]

(2) Certain trust amounts—(i) In general. *The distributable amount shall be increased by the income portion (as defined in subdivision (ii) of this subparagraph) of distributions from trusts described in section 4947(a)(2) with respect to amounts placed in trust after May 26, 1969.* * * *

(ii) Income portion of distributions to private foundations. For purposes of subdivision (i) of this subparagraph, the income portion of a distribution from a section 4947(a)(2) trust to a private foundation in a particular taxable year of such foundation shall be the greater of:

(*a*) The amount of such distribution which is treated as income (within the meaning of section 643(b)) of the trust, or

(*b*) The guaranteed annuity, or fixed percentage of the fair market value of the trust property (determined annually), which the private foundation is entitled to receive for such year, regardless of whether such amount is actually received in such year or in any prior or subsequent year.

(iii) Limitation. Notwithstanding subdivisions (i) and (ii) of this subparagraph, a private foundation shall not be required to distribute a greater amount for any taxable year than would have been required (without regard to this subparagraph) for such year had the corpus of the section 4947(a)(2) trust to which the distribution described in subdivision (ii) of this subparagraph is attributable been taken into account by such foundation as an asset described in paragraph (c)(1)(i) of this section.

[Emphasis added.]

The issue before us is straightforward: does the increase in the distributable amount set forth in the regulation constitute an unwarranted extension of the statutory provision which defines "distributable amount" in terms of "minimum investment return," as petitioner contends, or is it a reasonable interpretation of that provision which carries out the intent of Congress, as respondent contends? For the reasons hereinafter set forth, we agree with petitioner.

Initially, we note that the regulation in question herein was promulgated pursuant to the general authority granted to the Secretary of the Treasury by section 7805(a) and not

---

[5]Prior to 1982, sec. 53.4942(a)-2(b), Foundation Excise Tax Regs., read as follows:

(b) Distributable amount—(1) In general. For purposes of paragraph (a) of this section, the term "distributable amount" means an amount equal to the greater of the minimum investment return (as defined in paragraph (c) of this section) or the adjusted net income (as defined in paragraph (d) of this section), reduced by the sum of the taxes imposed on such private foundation for such taxable year under subtitle A of the Code and section 4940, and increased by the amounts received from trusts described in subparagraph (2) of this paragraph.

pursuant to specific legislative authority related to section 4942. It is therefore interpretative and, although it is entitled to respect, it is not entitled to the high degree of deference accorded to a legislative regulation. *Phillips Petroleum v. Commissioner*, 97 T.C. 30, 34 (1991).

The guidelines applicable to the issue before us have been set forth in *Stephenson Trust v. Commissioner*, 81 T.C. 283, 288 (1983):

> Although regulations are entitled to considerable weight, "respondent may not usurp the authority of Congress by adding restrictions to a statute which are not there." *Estate of Boeshore v. Commissioner*, 78 T.C. 523, 527 (1982). See *State of Washington v. Commissioner*, 77 T.C. 656 (1981), affd. 692 F.2d 128 (D.C. Cir. 1982). A regulation is not a reasonable statutory interpretation unless it harmonizes with the plain language, origin, and purpose of the statute. *United States v. Vogel Fertilizer Co.*, 455 U.S. 16 (1982); *Durbin Paper Stock Co. v. Commissioner*, 80 T.C. 252, 257 (1983). Where the statute's provisions are unambiguous, and its directive specific, the Commissioner has no power to amend it by regulation. *Koshland v. Helvering*, 298 U.S. 441, 447 (1936); *Arrow Fastener Co. v. Commissioner*, 76 T.C. 423 (1981). [Fn. ref. omitted.]

See also *Phillips Petroleum v. Commissioner, supra,* applying this standard to a "legislative" regulation.

Other guidelines often utilized in determining whether a regulation harmonizes with the statute, e.g., whether it is a contemporaneous construction of the statute, the length of time the regulation has been in effect, the impact of subsequent reenactments of the statute, see *National Muffler Dealers Association, Inc. v. United States*, 440 U.S. 472, 474 (1979), are subordinate to the mandate that the regulation may not construct an amendment to the statute. See *Bolton v. Commissioner*, 694 F.2d 556, 561 (9th Cir. 1982), affg. 77 T.C. 104 (1981).

An understanding of the historical framework of the statutory provisions and the regulations involved herein is an essential element in the resolution of the issue before us. Section 4942 was first enacted as section 101(b) of the Tax Reform Act of 1969, Pub. L. 91-172, 83 Stat. 502, which imposed the excise tax on the "undistributed income" of a private foundation. Undistributed income was defined as the excess of "distributable amount" over "qualifying distributions" and "distributable amount" was defined as an

amount equal to "minimum investment return or the adjusted gross income (whichever is higher)" reduced by the amount of specified taxes. Thus, there was a dual basis for the tax. Section 4942(g)(3) specified that a contribution from one private foundation to another private foundation would constitute a "qualifying distribution" only if the recipient foundation prior to the close of the next taxable year distributes an amount equal to the contribution for exempt purposes. The abuse to which section 4942 was directed was the opportunity then existing for individuals to receive an immediate benefit of deductible charitable contributions while deferring the actual transfer of funds for charitable purposes. H. Rept. 91-413 (Part 1) (1969), 1969-3 C.B. 200, 217. The House report stated: "To prevent avoidance of the 'current-benefits-to-charity' purpose * * * the bill requires a foundation to pay out at least a specified percentage of its average noncharitable assets." H. Rept. 91-413, *supra,* 1969-3 C.B. at 217. Also see S. Rept. 91-552 (1969), 1969-3 C.B. 423, 446-447. This is the origin of the minimum investment return. Congress wanted to be sure that a foundation did not invest in low-yield assets to skirt the requirement of distributing net income.

Section 101(b) of the Tax Reform Act of 1969 also enacted section 4947, which dealt with nonexempt trusts, including split-interest trusts such as the trust involved herein, and imposed various restrictions, comparable to those imposed on private foundations in respect of self-dealing, retention of excess business holdings, and the making of speculative investments or taxable expenditures but not including a mandatory income distribution requirement (such as that imposed on a private foundation). Sec. 4947(a)(2). [6] Section 4947 was enacted to prevent taxpayers from using the split-interest trust device to avoid the restrictions being imposed on private foundations. S. Rept. 91-552, *supra,* 1969-3 C.B. at 483-484. The 1969 Act also contained significant limitations on the availability of charitable deductions, in respect of contributions to trusts, for income, estate, and gift tax purposes; the result, in the instant case, was to preclude Jackson from an income tax

---

[6]Certain nonexempt trusts, i.e., where all of the unexpired interests are devoted to exempt purposes, are excepted from these restrictions. Sec. 4947(a)(1).

deduction in respect of the transfer to the trust but to allow her a gift tax deduction.

In 1971, a Treasury regulation was proposed to implement section 4942. See sec. 53.4942(a)-2(c)(1)(ii)(e,) Proposed Foundation Excise Tax Regs., 36 Fed. Reg. 11034, 11037 (June 8, 1971). The proposed regulation excluded from the definition of assets to be taken into account, in computing "minimum investment return," any future interest of a trust described in section 4947(a)(2) (with exceptions not pertinent to the instant case) but included the assets of such a trust to which a current interest of the trust was attributable. After receiving criticisms of the proposed regulation, relating principally to the fact that such a provision saddled a private foundation with having to pay out an amount in respect of assets over which it had no control and with respect to which it had a limited or nonexistent right to receive income currently, the regulation involved herein, see *supra* pp. 536-537, was promulgated on February 2, 1973; the restriction excluding a future interest from the assets of a private foundation, sec. 53.4942(a)-2(c)(2)(i), Foundation Excise Tax Regs., was retained. T.D. 7256, 1973-1 C.B. 496, 503.

The next event in this legislative scenario occurred when section 823 of the Economic Recovery Tax Act of 1981, Pub. L. 97-34, 95 Stat. 351, was enacted. At that time, Congress was concerned that, because of inflationary pressures, the net income requirement as a measure of the required distribution under section 4942 was having an adverse effect on the investment policies of private foundations. See 127 Cong. Rec. 17120 (1981). Accordingly, section 4942 was amended to eliminate the dual distribution requirement and to limit the required distribution to a single basis, i.e., the "minimum investment return." See H. Rept. 97-215 (Conf.) (1981), 1981-2 C.B. 481, 525; Staff of the Joint Comm. on Taxation, General Explanation of the Economic Recovery Tax Act of 1981 at 367 (J. Comm. Print 1981).[7]

---

[7] After the foregoing legislative change was made in the distribution requirement, paragraph (b)(1) of the regulation was changed to eliminate the previously existing reference to "adjusted net income"; paragraph (b)(2) was left unchanged, *supra* note 5.

Petitioner argues that the legislative history shows clearly that Congress deliberately intended to relieve split-interest trusts from the mandatory distribution requirement applicable to private foundations and that respondent's regulation in effect mandates a distribution by such a trust to the private foundation beneficiary. We think petitioner presses its position too far. The regulation does not require such a trust to distribute any amount, it only attempts to define how a distribution that is made should be treated in the hands of the recipient private foundation.

Respondent contends that Congress sought to ensure that the income of private foundations and split-interest trusts be used currently for charitable purposes and that the regulation in question represents a reasonable way of achieving that purpose. We disagree with this point of view as well because we are convinced that, accepting the fact that Congress had such a purpose, it simply did not provide a sufficient foundation to enable that purpose to be achieved by regulation. It may well be that there is a gap which Congress ought to close, but we are not at liberty to add to, or alter, the language of a statute in order to accomplish such a result. *Hanover Bank v. Commissioner,* 369 U.S. 672, 687 (1962). In so concluding, we think it significant that Congress dealt, to a limited degree, with the type of problem which concerns respondent by imposing limitations in respect of distributions from one private foundation to another private foundation. Sec. 4942(g)(3).

The fact that the regulation has been on the books for 18 years or that, during that period, Congress has twice adjusted the distribution requirement[8] in an effort to fine tune the balance between curbing abuses and the economic realities faced by private foundations does not provide a basis for our sustaining the regulation under the circumstances herein. *Bolton v. Commissioner, supra.* In this connection, we note that the keying of "distributable amount" to "adjusted net income" as well as to "minimum investment return" in the statutory language in effect prior to 1981 may have provided, under some circumstances, a

---

[8]In addition to eliminating the "adjusted net income" requirement in 1981, Congress, in 1976, changed the percentage for computing "minimum investment return" from 6 to 5 percent and eliminated the authority of the Secretary of the Treasury to determine the applicable percentage. Tax Reform Act of 1976, Pub. L. 94-455, sec. 1303, 90 Stat. 1715.

sufficient basis for sustaining the regulation as applied to pre-1982 years. But, as we have pointed out, *supra* p. 540, that basis was eliminated in 1981 and with it the possibility of sustaining the regulation.

The simple fact is that "distributable amount" is now statutorily defined in terms of "minimum investment return," which in turn is defined in terms of a fixed percentage (currently 5 percent, *supra* note 8), to the foundation's "assets." Given this clear statutory linkage of the three terms, there is simply no statutory basis for the regulation, which by its terms pulls assets of a split-interest trust, which makes a distribution to a private foundation, into the "assets" of the foundation. To sustain respondent's position would require us to accord a broader interpretation to the word "assets" than its ordinary, everyday meaning. This we are not prepared to do under the circumstances herein, particularly since the regulation itself is not structured as a definitional treatment of that word. See *Hanover Bank v. Commissioner, supra.* Cf. *Gresham v. Commissioner,* 79 T.C. 322 (1982), affd. 752 F.2d 518 (10th Cir. 1985), holding invalid a regulation which engrafted on the statutory language "fair market value" an added element that restrictions on the sale of stock should not be taken into account.

While we recognize that a determination of the validity or invalidity of a regulation is usually dependent upon the circumstances of each case, we are reinforced in our analysis by the manner in which the guidelines set forth in *Stephenson Trust v. Commissioner,* quoted *supra* p. 538, were applied by the Court in that case. There the issue was the validity of a regulation which consolidated several trusts rather than treating them as separate entities for the purposes of section 641 et seq. (subchapter J). After a review of the various elements of legislative history, which included partial statutory reaction to the multiple-trust doctrine (not unlike the situation herein, *supra* p. 541), we held the consolidation regulation invalid, irrespective of the presence or absence of a tax avoidance motive, on the ground that it added restrictions not encompassed in the statute. Cf. *Durbin Paper Stock Co. v. Commissioner,* 80 T.C. 252 (1983), where a regulation was held invalid, which

sought to modify a statutory provision keyed to the "par or stated value" of the outstanding stock of a corporation claiming DISC status under section 992 by establishing a "paid-in capital" requirement in which notes or other evidences of indebtedness of a shareholder-obligor were excluded, on the ground that the regulation added a provision which Congress did not include; [9] *Estate of Pullin v. Commissioner,* 84 T.C. 789 (1985), where a regulation, where cotenants of a tenancy in common with a decedent were included as persons having an interest in the property required to execute the election agreement under section 2032(A), was invalidated because it did not rest on any statutory authority; *Estate of Boeshore v. Commissioner,* 78 T.C. 523 (1982), where we invalidated a regulation, under which no deduction was allowable under section 1055(a) for a charitable unitrust interest which followed a private unitrust interest, on the ground that the regulation added an unauthorized restriction to the statute. See also *Iglesias v. United States,* 848 F.2d 362 (2d Cir. 1988), where the Court of Appeals expressed the view that a regulation which excluded prejudgment interest from gross income from sources within the United States altered the scope of the statute and was therefore invalid.

We hold that section 53.4942(a)-2(b)(2), Foundation Excise Tax Regs., is invalid as an unwarranted extension of the "minimum investment return" provision of section 4942(e). In view of this holding, petitioner is not liable for any additions to tax under section 6651(a)(1) for failure to file a return on Form 4720 for the years in issue.

*Decision will be entered for the petitioner.*

Reviewed by the Court.

NIMS, CHABOT, KÖRNER, SHIELDS, COHEN, CLAPP, SWIFT, GERBER, WRIGHT, PARR, WELLS, WHALEN, COLVIN, HALPERN, and BEGHE, *JJ.,* agree with this opinion.

---

[9]See also *Caterpillar Tractor Co. v. United States,* 218 Ct. Cl. 517, 589 F.2d 1040 (1978), and *Arrow Fastener Co. v. Commissioner,* 76 T.C. 423 (1981), where other regulations governing DISC corporations were also held invalid on the ground that they lacked a statutory base.

JACOBS, *J.*, did not participate in the consideration of this opinion.